DAWSON V. PARHAM.

1.  EJECTMENT: *Evidence of title.*
    A plaintiff in an action for the recovery of real property must succeed upon the strength of his own title, and not upon the weakness of his adversary's; and until he proves title and a consequent right of possession the defendant needs not to offer any evidence in support of his own right.

2.  SAME: *Same; Administrator's deed.*
    An administrator's deed of his intestate's land, made without an order of a court of competent jurisdiction, is a nullity, and no evidence of title in the grantee.

APPEAL from *St. Francis* Circuit Court.
Hon. M. T. SANDERS, Circuit Judge.

*Geo. H. Sanders* for Appellants.

The deed from Johnson's administrator to Pool and Dawson was the only missing link in appellant's title.  This is supplied by J. H. Dawson's testimony.

The finding of the court was contrary to the evidence.

An execution deed is *prima facie* evidence of its recitals concerning levy, notice, sale and compliance of the officer with his duties, but it is not and can be no more evidence of title in the execution defendant than if it did not exist. *16 Ark., 543; 22 Id., 529; 22 Id., 579.*

The presumption of law is, that the existence of a deed being proven, it was correctly and regularly made, its execution being an official act. *25 Ark., 314; 12 Wheat., 70.*

*Weatherford & Estes* for Appellees.

If Johnson's administrator made a deed, under the law in force it must have been pursuant to an order or decree of the circuit court. *Gould's Dig. pp. 135-6.* No law makes the *recitals* in such deed evidence ; the deed must be *proved.* A *foundation* must be laid for such evidence, which presupposes more search than a simple letter of inquiry. *1 Gr. Ev., 558; 1 Stark Ev., 336; 2 Sneed (Tenn.), 683.*

BATTLE J. H. B. and T. C. Dawson sued John Parham and Anna W. Parham, in the St. Francis circuit court, for a tract of land. They aver, in their complaint, that they are the owners of and entitled to the possession of the land and that defendants hold possession thereof without right, which defendants deny.

The issues of fact arising in the action were, by consent of both parties, tried by the court.

To prove title, plaintiffs introduced as evidence in the trial a certificate of purchase executed by a land agent of the State of Arkansas on the third day of December, 1853, certifying that G. V. C. Johnson was the purchaser of the land in controversy, and also introduced J. H. Dawson, as a witness, who testified: G. V. C. Johnson sold the land in controversy and

other lands to John Dawson and J. H. Pool and executed to them a bond for title. G. V. C. Johnson died and John C. Johnson was appointed his administrator. John Dawson and Pool paid the purchase money, and the administrator of G. V. C. Johnson, under an order of a court, conveyed the lands to them by deed. He, witness, did not see the order of the court, or remember what court made it, but some one told him the order had been made. John Dawson and Pool divided the lands conveyed to them between themselves, and he purchased Pool's part. The land in controversy was set apart to John Dawson in the division. When he purchased from Pool, Pool handed him the deed executed by Johnson's administrator, and he gave it to the clerk to record and paid him for recording. He did not see it recorded, and cannot say that it was. He thinks the clerk afterwards returned it to him and that he sent it to his brother in Tennessee, but that he is not certain that he saw it again after he filed it with the clerk, or when, if he did. He does not know what became of the deed. He has searched for it and cannot find it. The records in the clerk's office have been destroyed since the deed was filed. John Dawson died at his home in Maury county, Tennessee, in 1875 or 1876, leaving J. A. Dawson, H. A. Dawson, N. G. Frierson, T. D. Barrow, E. G. Long, C. A. Kittrell, M. Dawson, M. P. Dobbins and Jacob H. Dobson, his only surviving heirs.

Plaintiffs also introduced as evidence the deeds of the heirs of John Dawson, deceased, conveying the land in controversy to them.

The court found, in effect, that plaintiffs had failed to prove that they were the owners of and entitled to the possession of the land sued for, and rendered judgment in favor of defendants; and plaintiffs appealed.

As a general rule plaintiffs in actions of ejectment, or other real actions, can recover only upon the strength of their own titles and not upon the weakness of their adversary's. For

1. EJECTMENT: Plaintiff must succeed on his own title.

possession is always *prima facie* evidence of title, and a party cannot be deprived of his possession by any person but the rightful owner, who has the *jus possessionis*. The defendant, therefore, needs not show any title in himself, until the plaintiff has shown some right to disturb his possession. Until the plaintiff "shows a paramount title, the defendant is entitled to a verdict, and this without producing the evidence on which his right is based." *2 Greenleaf on Evidence, sec. 331.*

Prior to the time when defendants took possession of the land in controversy, the evidence does not show that any one, at any time, had actual possession. It was, therefore, incumbent on plaintiffs to prove that they had the legal title and were thereby entitled to the possession. To do this they attempt to prove the existence of a deed executed by Johnson's administrator to Dawson and Pool in pursuance of a contract made by his intestate, and that the same had been lost or destroyed.

2. EVIDENCE OF TITLE: Administrator's deed.    In order to show that a valid deed was executed by Johnson's administrator it was necessary for plaintiffs to prove that the same was executed in pursuance of an order or decree of a court of competent jurisdiction. Any deed made by Johnson's administrator without such an order or decree was a nullity and conveyed nothing.

There was no competent evidence of an order or decree of any court authorizing Johnson's administrator to convey the land to Dawson and Pool. The witness, Dawson, had never seen any such order or decree, but had been told that there was one. The deed being a nullity, if any was ever executed, could not be evidence of its recitals, if it contained any; and there was no evidence that it contained any. *Mansfield's Digest, sec. 668.*

There was no evidence introduced in the trial to prove that any action was ever instituted by any one to compel Johnson's administrator to convey the land in controversy. There was no

competent evidence, even, to show the contents of the bond for title mentioned by the witness, that there was any search made for it, or that it was lost or destroyed.

Then, again, the court sitting as a jury was the judge of the credibility of the witness, Dawson, and it is manifest from its findings, for reasons unnecessary to mention, did not believe his testimony.

We find no error prejudicial to plaintiffs in the judgment of the court below, and it is affirmed.